IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMPANA LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:07-CV-1293-D |
| VS. | § | |
| | § | |
| MONDIAL ASSISTANCE SAS d/b/a | § | |
| WORLD ACCESS, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff's motion to remand presents the question whether a forum selection clause requiring all contract-related disputes to be brought in state court estops a defendant from removing a suit that is premised in part on the contract, when the defendant is a non-signatory to the contract but has previously enforced other provisions of it. Concluding that the forum selection clause does estop the removing defendant, the court grants plaintiff's motion to remand the case to state court and declines to reach the other pending motions.

I

The facts essential to resolving this motion are not in dispute. Since 2004 plaintiff Compana LLC ("Compana") has owned the exclusive rights to the domain name mondial.com. Because Compana is also a domain-name registrar accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN")—the quasi-governmental body that regulates many aspects of the

Internet——Compana registered the domain name mondial.com with itself.[1] Thus with respect to mondial.com, Compana is both domain-name registrant and registrar.

To maintain its accreditation with ICANN as an approved registrar, Compana must adhere to its Registrar Accreditation Agreement ("Accreditation Agreement") with ICANN.[2] Section 3.8 of the Accreditation Agreement requires that all registrars incorporate ICANN's Uniform Domain Name Dispute Resolution Policy ("UDRP") into their registration agreements with domain-name registrants. The UDRP reads as a contract provision between the registrant and registrar: "The policy is between the registrar . . . and its customer (the domain-name holder or registrant). Thus, the policy uses 'we' and 'our' to refer to the registrar and it uses 'you' and 'your' to refer to the domain-name holder." P. App. 27. The UDRP's principal provision requires registrants "to submit to a mandatory administrative proceeding" initiated by a third-party complainant. *Id*. at 28. The scope of these UDRP proceedings is limited to cases of "abusive" registrations of Internet domain names. ICANN, *Second Staff Report on Implementation Documents for the Uniform Dispute Resolution Policy*

---

[1]As domain-name registrar, Compana does business as "Budgetnames."

[2]The Accreditation Agreement can be found on ICANN's website. ICANN, *Registration Accreditation Agreement* (May 17, 2001), *a v a i l a b l e    a t* http://www.icann.org/registrars/ra-agreement-17may01.htm.

(Oct. 25, 1999), *available at* http://www.icann.org/udrp/udrp-second-staff-report-24oct99.htm. For a third-party complainant to prevail in the UDRP proceedings, it must prove that (1) the registrant's domain name is identical or confusingly similar to its trademark, (2) the registrant has no rights or legitimate interests in the domain name, and (3) the registrant has registered the domain name in bad faith. P. App. 28. If the complainant establishes these elements, the panel that arbitrates the UDRP proceedings has the authority to cancel or transfer the registrant's domain name. *Id.* at 30. Section 1 of the UDRP declares that proceedings under the policy are governed by the Rules of Uniform Domain Name Dispute Resolution Policy ("UDRP Rules").

Consistent with the Accreditation Agreement, Compana as domain name registrar requires every registrant who seeks to register a domain name with Compana to enter into a Customer Registration Agreement ("Registration Agreement") that makes the UDRP binding upon the registrant. *Id.* at 5-6. The parties agree that the Registration Agreement is the contract that governs the relationship between Compana, as registrar, and Compana, as registrant, for mondial.com.

The Registration Agreement also contains the following forum selection clause:

> Any action relating to this Agreement and your
> rights, obligation, duties, and actions
> contemplated by this Agreement must be brought
> in a Court of The State of Texas, located in
> Dallas, County, Texas. Both parties
> irrevocably consent to the personal
> jurisdiction, subject matter jurisdiction, and
> venue of such courts.

*Id.* at 10.

In April 2007 defendant Mondial Assistance S.A.S ("Mondial"), a French corporation, sent a letter to Compana demanding that Compana voluntarily surrender the mondial.com domain name, contending that "[t]his domain name is confusingly similar to the trademarks owned by Mondial." P. Inj. App. 203. Mondial also contended that "Compana does not have any rights or legitimate interests with respect to this domain and we consider its use by Compana to be improper and in bad faith." *Id.*

After Mondial recognized that Compana would not respond to the letter, it initiated UDRP proceedings against Compana by filing a complaint with the World Intellectual Property Organization ("WIPO"), one of the ICANN approved arbitration panels. The WIPO's central location is in Geneva, Switzerland. In the WIPO complaint, Mondial alleged the three elements for an "abusive" registration of a domain name against Compana. *Id.* at 209-14. To establish the WIPO's jurisdiction to arbitrate Mondial's complaint, Mondial invoked the Registration Agreement between Compana, as registrar, and Compana, as registrant, that governed the registration of mondial.com: "The registration agreement, pursuant to which the

- 4 -

domain name that is the subject of this Complaint is registered, incorporates the [UDRP]." *Id.* at 207.  Compana and Mondial have both participated in these UDRP proceedings, but the WIPO has not yet made a final determination of the merits of Mondial's claim.

In July 2007 Compana filed suit in Texas state court, seeking a declaratory judgment that its use of the mondial.com domain name does not violate Mondial's trademark rights, and requesting a permanent injunction prohibiting the transfer of the mondial.com domain name to Mondial.  Despite the mandatory character of the UDRP proceedings, registrants are not prohibited from filing suit against the complainant over the very same subject matter of pending or completed UDRP proceedings.  "The mandatory administrative proceedings requirement set forth in Paragraph 4 shall not prevent either you or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded."  P. App. 30; *see also Parisi v. Netlearning, Inc.*, 139 F.Supp.2d 745, 751 (E.D. Va. 2001) ("[T]he UDRP contemplates parallel litigation.  Nothing in the UDRP restrains either party from filing suit before, after, or during the administrative proceedings.").  Thus UDRP proceedings and parallel civil litigation are not mutually exclusive.  "The remedies available in these *fora* differ, and the standards of liability, while similar, are not identical."  *Am. Online Latino v.*

*Am. Online, Inc.*, 250 F.Supp.2d 351, 358 (S.D.N.Y. 2003).

Mondial removed the state court suit to this court based on diversity of citizenship. Compana then filed the instant motion to remand.[3]  Although Compana does not deny that the court has diversity jurisdiction, it contends that Mondial is bound by the Registration Agreement's forum selection clause that designates state court as the mandatory forum for litigating disputes related to the Registration Agreement.  The parties agree that Mondial is not a signatory to the Registration Agreement.  But Compana contends that, under theories of estoppel and third-party beneficiary, Mondial cannot avoid enforcement of the forum selection clause in this case.

II

The court turns first to Compana's motion to remand, because if the forum selection clause is binding on Mondial, the case must be remanded, and the court need not decide the other pending motions.

"For a contractual clause to prevent a party from exercising its rights to removal, the clause must give a 'clear and unequivocal' waiver of that right." *City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 504 (5th Cir. 2004) (quoting *McDermott Int'l, Inc. v. Lloyds Underwriters*, 944 F.2d 1199, 1212 (5th Cir.

---

[3]There are other pending motions, but the court need not reach them.

1991)); *see*, *e.g.*, *Global Satellite Commc'n Co. v. Starmill. U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) ("[A] forum selection clause may constitute a waiver of a defendant's right to remove an action to federal court."); *Unity Creations, Inc. v. Trafcon Indus., Inc.*, 137 F.Supp.2d 108, 111 (E.D.N.Y. 2001) ("[I]f the parties' agreement stipulates that a state court shall be the *venue* for a dispute, the defendant's right to remove the case to federal court would be deemed waived[.]"). The Registration Agreement's forum selection clause clearly and unequivocally requires that suits related to the Agreement "be brought in a Court of The State of Texas, located in Dallas, County, Texas." P. App. 10. The language of a forum selection clause determines which causes of action fall within its scope. *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998). The forum selection clause provides that "[a]ny action relating to this Agreement and your rights, obligations, duties, and actions contemplated by this Agreement must be brought in a Court of The State of Texas, located in Dallas, County, Texas." P. App. 10. Mondial does not deny that Compana's declaratory judgment suit relates to Compana's rights under the Registration Agreement. Thus if Mondial is bound by the Registration Agreement's forum selection clause, it is precluded from removing this case to this court, and the court must grant Compana's motion to remand.

III

Federal law governs whether the Registration Agreement's forum selection clause binds Mondial in this action. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) ("The proper law to apply to [enforceability of a forum selection clause] is federal, whether jurisdiction is based on diversity, a federal question, or some combination of the two."). "Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003). The Fifth Circuit has recognized six theories for binding a non-signatory of a contract to the contract's arbitration clause: "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third party beneficiary theory." *Id.*; *see also Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006). The Fifth Circuit has applied to a contract's forum selection clause the line of cases invoking these principles. *See Hellenic*, 464 F.3d at 520 (holding that non-signatory to contract was bound by contract's forum selection clause based on estoppel). Compana contends that two of these six theories──estoppel and third-party beneficiary theory──prevent Mondial from avoiding the Registration Agreement's forum selection clause. Because the court holds that direct-benefits estoppel is sufficient to bind Mondial as a non-signatory to the Registration

- 8 -

Agreement's forum selection clause, the court need not address Compana's third-party beneficiary argument.

IV

A

"The use of equitable estoppel is within a district court's discretion." *Bridas*, 345 F.3d at 360 (citing *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000)). The Fifth Circuit recognizes two theories of estoppel that can bind a non-party of a contract to the contract's arbitration or forum selection clause. The first is called an "intertwined claims theory" of equitable estoppel, which grants a non-signatory to a contract the right to enforce a provision of the contract against a signatory. *Id.* at 360-61. Because Compana, a signatory of the Registration Agreement, is attempting to enforce the forum selection clause against Mondial, a non-signatory, this intertwined claims theory has no relevance to this case.

The Fifth Circuit recognizes another form of estoppel——"direct benefits estoppel"——which grants a signatory to a contract the right to enforce a contract provision against a non-signatory. *Id.* at 361-62. "Direct benefits estoppel applies when a non-signatory 'knowingly exploits the agreement containing the arbitration clause.'" *Id.* (quoting *E.I. DuPont de Nemours & Co., v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001)). In *Hellenic* the Fifth Circuit

- 9 -

specifically relied on the direct-benefits estoppel theory to bind a non-signatory to a contract's forum selection clause. *Hellenic*, 464 F.3d at 520.    "Direct-benefit estoppel 'involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause.'" *Id.* at 517-18 (quoting *DuPont*, 269 F.3d at 200).[4]

B

Compana maintains that in compelling it to participate in the UDRP proceedings before the WIPO, Mondial has received a direct benefit under the Registration Agreement and thus should not be allowed to avoid the contract's other provisions, including the forum selection clause.  Compana characterizes Mondial's initiation of UDRP proceedings as exploiting the Registration Agreement to the extent that Mondial is estopped from avoiding enforcement of the contract's forum selection clause on the basis of its non-signatory status.

Mondial posits that Compana is confusing the contractual

---

[4]In *Bridas*——the first Fifth Circuit case to recognize direct-benefits estoppel theory——the plaintiff sued the government of Turkmenistan to confirm an arbitration award. *Bridas*, 345 F.3d at 351.   Turkmenistan argued that it was not bound to arbitrate the dispute, because it never signed the contract containing the arbitration clause.   While the court acknowledged the availability of a "direct benefits version of estoppel," it concluded that, because Turkmenistan had not "brought suit against a signatory premised in part upon the agreement," Turkmenistan "has thus not 'exploited' the [contract] to the degree that the cases that consider applying this version of estoppel require." *Id.* at 362.

relationships.  Mondial points to the Accreditation Agreement, the contract between Compana and ICANN, not the Registration Agreement, as the basis for Compana's duty to enter into the UDRP proceedings with Mondial before the WIPO.  Thus Mondial maintains that it neither exploited the Registration Agreement nor received any direct benefit under the Registration Agreement by initiating the UDRP proceedings against Compana.

C

The Accreditation Agreement between Compana as domain-name registrar and ICANN does require that Compana incorporate the UDRP into the registration agreements that it enters into with domain-name registrants.  Accreditation Agreement § 3.8.  But the Accreditation Agreement also prevents any party other than the contracting parties from enforcing its provisions.  *Id.* at § 5.10 ("This Agreement shall not be construed to create any obligation by either ICANN or Registrar to any non-party to this Agreement, including any Registered Name Holder.").  Thus Mondial could not have based its right to bring Compana before the WIPO for the UDRP proceedings on the Accreditation Agreement.  Rather, it is the Registration Agreement that requires Compana as the domain name holder of mondial.com to enter into UDRP proceedings with third parties, such as Mondial, who initiate arbitration of their claims that the registrant's domain name violates the complainants' trademark rights.  P. App. 5-6.

The cases that have discussed the issue confirm that ICANN enforces the UDRP through the individual registration agreements between the registrant and registrar.

> Although ICANN exerts quasi-governmental sway over the growth and administration of the Internet, the UDRP is enforced through contract rather than regulation. Every domain name registrar accredited by ICANN must incorporate the UDRP into each individual domain name registration agreement. In effect, the UDRP binds registrants by virtue of their contracts with registars[.]

*Parisi*, 139 F.Supp.2d at 747 (citation omitted); *see also Am. Online*, 250 F.Supp.2d at 357 ("Thus, by contracting with [the registrar], [the registrant] admittedly agreed to arbitrate any claim involving the domain name."). Therefore, absent the Registration Agreement, Compana would have no contractual duty to participate in the UDRP proceedings initiated by Mondial. It is only through enforcing the Registration Agreement that Mondial has any hope of obtaining relief under the UDRP for an abusive registration. Mondial acknowledged as much when it filed its complaint against Compana with the WIPO. In the section of the complaint entitled "Jurisdictional Basis for Administrative Proceeding," Mondial cited the Registration Agreement. P. Inj. App. 207. Thus by initiating UDRP proceedings against Compana with the WIPO, Mondial exploited the Registration Agreement and received a direct benefit from it.

D

The next question is whether Mondial's filing of the UDRP complaint against Compana based on the Registration Agreement is sufficient exploitation of the Registration Agreement to justify application of direct-benefits estoppel. *Bridas* pointed to bringing "suit against a signatory premised in part upon the agreement" as the kind of exploitation that merits estoppel. *Bridas*, 345 F.3d at 362. Initiating arbitration proceedings under the UDRP is analogous to filing a lawsuit. But in *Bridas* the court referred to direct-benefits estoppel in the context of enforcing a contractual provision against a non-signatory in the same suit that the non-signatory initiated based in part on the contract. Here, a signatory (Compana) is seeking to enforce a contractual provision against a non-signatory (Mondial) in a suit instigated by the signatory (Compana), when the non-signatory (Mondial) had previously based an arbitration claim against the signatory (Compana) on the contract. Although *Bridas*' description of the direct-benefits estoppel theory gives the impression that the direct benefit to the non-signatory must derive from the non-signatory's being a plaintiff in the lawsuit before the court, other cases clarify that the direct benefit necessary for application of estoppel need not flow from the non-signatory's status as plaintiff in a suit premised in part on the contract.

In *Hellenic* the Fifth Circuit enforced a forum selection

clause against a non-signatory to the contract, because the non-signatory received a direct benefit under the contract that was independent of the non-signatory's status as plaintiff in the case. *Hellenic*, 464 F.3d at 520. After purchasing a sea vessel, Hellenic Investment Fund ("Hellenic") discovered that the classification society that had classified the vessel in conjunction with the sale failed to identify a number of defects in the vessel that a careful inspection should have revealed. *Id.* at 516. Hellenic filed suit against the classification society for fraudulent misrepresentation in the classification documents on which Hellenic had relied in consummating the purchase. *Id.* Based on a direct benefits-estoppel theory, the court held that the contract between the vessel's seller and the classification society required Hellenic to submit to the contract's forum selection clause in its suit against the classification society, even though Hellenic was never a party to that agreement. *Id.* at 520. Although Hellenic did not sue for breach of the agreement, the court distinguished *Bridas* on the basis that the non-signatory (Hellenic) was a plaintiff in a suit premised in part on the contract. *Id.* at 518-20. Yet the court located Hellenic's direct benefits from the contract outside its status as plaintiff in the lawsuit. *Id.* at 519. *See Wood v. PennTex Res., L.P.*, 458 F.Supp.2d 355, 369 (S.D. Tex. 2006) (stating that in *Hellenic*, "[t]he basis for direct-benefits estoppel was not that the nonsignatory had sued the signatory under

the contract containing the arbitration clause."). The *Hellenic* panel noted that without the classification society's performance on its contract with the seller, Hellenic would never have consummated the purchase, because the classification inspections were necessary to operate the vessel in commerce. *Hellenic*, 464 F.3d at 519. "It is clear that many benefits flowed directly to Hellenic when [the classification society] performed its contract with [the seller]." *Id.*

The Fifth Circuit based its *Hellenic* decision in part on *American Bureau of Shipping v. Tencara Shipyard, S.P.A.*, 170 F.3d 349 (2d Cir. 1999), an almost identical case in which the Second Circuit applied direct-benefits estoppel after finding that the non-signatory had accepted benefits from the contract that were independent of the non-signatory's suing under that contract. *Id.* at 353. The Fifth Circuit has also approved of another Second Circuit case that recognized that, for estoppel to apply, the direct benefit to the non-signatory need not be derived from suing the signatory. *See Wash. Mut. Fin. Group. v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995)); *see also Thomson-CSF*, 64 F.3d at 779 (stating that purchasing equipment under the contract would have been sufficient direct benefit).

Nevertheless, applying direct-benefits estoppel theory to bind Mondial to the Registration Agreement's forum selection clause

requires the court to go beyond *Hellenic*.  While *Hellenic* widened the scope of estoppel theory recognized in *Bridas* by finding direct benefits from a contract apart from the non-signatory's status as a plaintiff under the contract, the non-signatory in *Hellenic* was a plaintiff in a suit in which the signatory sought to enforce the forum selection clause, and the non-signatory's suit was related to the contract.  In the present case, the signatory (Compana) seeks to enforce the contract's forum selection clause against the non-signatory (Mondial) in a lawsuit brought by the signatory (Compana), although Mondial has undoubtedly received direct-benefits under that contract.

The court holds that there is sufficient case law and reasoning to extend the direct-benefits estoppel theory to a case where the signatory sues the non-signatory and insists on enforcing a forum-selection provision in a contract that the non-signatory did not sign, but from which the non-signatory directly benefited in seeking to arbitrate essentially the same dispute.  Some courts addressing the direct-benefits estoppel theory "have not focused on whether the nonsignatory actually sued under the agreement but on whether the nonsignatory '*directly* benefi[t]ed' from the agreement."  *Legacy Wireless Servs. v. Human Capital, LLC*, 314 F.Supp.2d 1045, 1057 (D. Or. 2004) (emphasis in original) (quoting *Thomson-CSF*, 64 F.3d at 779).  In *Legacy Wireless* the court refused to grant the non-signatory's motion to dismiss, which was based on

- 16 -

the argument that "it ha[d] not sued under the [contract]." *Id.* at 1057. The court concluded, *inter alia*, that the non-signatory might have received other direct benefits under the contract. *Id.* It quoted *International Paper Co. v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 418 (4th Cir. 2000), for the "general principle [that] a 'nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a "direct benefit" from a contract containing an arbitration clause.'" *Id.* And the court noted that in *American Bureau of Shipping*, where the signatory filed a petition seeking to compel non-signatories to arbitrate, the Second Circuit held the non-signatories to be bound to an arbitration clause because the clause appeared in an agreement that resulted in a direct benefit to the non-signatories. *Id.* (citing *Am. Bureau of Shipping*, 170 F.3d at 353). "The court nowhere emphasized the effect on the analysis, if any, of whether or not the nonsignatory had filed suit under the agreement." *Id.* Instead, "[t]he dispositive point was that 'on the actual facts' the nonsignatories 'received direct benefits' from the contract." *Id.*

In addition to cases that support extending the theory to non-plaintiffs, the reasoning for the theory does so as well. As the Fifth Circuit explained in *Bailey*,

> the doctrine of estoppel prevents a party from
> having it both ways.  Yet this is what [the
> non-signatory to the contract] is attempting
> to do here: suing based upon one part of a
> transaction that she says grants her rights
> while simultaneously attempting to avoid other
> parts of the same transaction that she views
> as a burden——namely, the arbitration
> agreement.  We find that the doctrine of
> equitable estoppel acts to prevent her from
> taking such inconsistent positions.

*Bailey*, 364 F.3d at 268 (citations and internal quotation marks omitted).  Direct-benefit estoppel therefore precludes a non-signatory who, despite its non-signatory status, has embraced a contract from attempting to repudiate a contractual arbitration clause.  Regardless whether a non-signatory is a plaintiff to a lawsuit, it can engage in conduct that falls within the rationale for applying this estoppel theory.

In the present case, for example, the fact that Mondial is not a plaintiff in the parties' underlying domain-name dispute does not mean that Mondial did not directly benefit under the Registration Agreement.  Although Mondial did not sue Compana under this agreement, it initiated UDRP proceedings against Compana, invoking the Registration Agreement as the basis to establish its right to proceed before the WIPO.  Therefore, although not a plaintiff in the instant declaratory judgment action, Mondial directly benefited under the Registration Agreement by forcing Compana into arbitration before the WIPO of the domain-name dispute at issue in the present litigation.  Despite Mondial's status as the defendant

in this lawsuit, it sufficiently exploited the Registration Agreement so that it directly benefited from it and should be bound by its forum selection clause.

E

Mondial correctly points out that, under Fifth Circuit precedent, the non-signatory must "knowingly" accept benefits of the contract at issue in order for direct-benefits estoppel to apply. *See Hellenic*, 464 F.3d at 517-18; *Bridas*, 345 F.3d at 361-62. But Mondial's arbitration complaint explicitly refers to the Registration Agreement as the basis for Mondial's right to require Compana to arbitrate Mondial's trademark infringement claims. P. Inj. App. 207. Mondial thus knowingly exploited the Registration Agreement.

Mondial maintains that, even if it knowingly invoked the Registration Agreement, it had no reason to know of the Registration Agreement's particular terms, including the forum selection clause. But no case that applies direct-benefits estoppel requires that the non-signatory actually be aware of the contract term at issue (whether arbitration clause or forum selection clause) when the non-signatory directly accepts benefits under the contract. Moreover, Mondial's WIPO complaint suggests that it reviewed the Registration Agreement in detail and was specifically aware of the forum selection clause. In ¶ 43 of the complaint, Mondial avers:

- 19 -

> In accordance with Paragraph 3(b)(xiii) of the
> Rules, the Complainant will submit, with
> respect to any challenges that may be made by
> the Respondent to a decision by the
> Administrative Panel to transfer the domain
> name that is the subject of this Complaint, to
> the jurisdiction of the courts where the
> principal office of the concerned registrar is
> located, *as the Respondent has submitted in
> its registration agreement to that
> jurisdiction for court adjudication of
> disputes concerning or arising from the use of
> the domain names.*

P. Inj. App. 215 (emphasis added).  It is unlikely that Mondial
would have known that Compana had consented to jurisdiction of the
courts where the principal office of the registrar is located
unless Mondial had reviewed the Registration Agreement's forum
selection clause, which is the only provision in the Registration
Agreement dealing with jurisdiction of suits related to the
contract.

F

Mondial also argues that the UDRP Rules provide a forum
selection clause that Compana's Registration Agreement cannot
override.  The UDRP Rules lay out the requirements for complaints
filed under the UDRP.  *Id.* at 12-14.  One such requirement is that
the complaint must "[s]tate that Complainant will submit, with
respect to any challenges to a decision in the administrative
proceedings canceling or transferring the domain name, to the
jurisdiction of the courts in at least one specified Mutual
Jurisdiction."  *Id.* at 13.   The UDRP Rules define "Mutual

- 20 -

Jurisdiction" as

> a court jurisdiction at the location of either
> (a) the principal office of the Registrar
> (provided the domain-name holder has submitted
> in its Registration Agreement to that
> jurisdiction for court adjudication of
> disputes concerning or arising from the use of
> the domain name) or (b) the domain-name
> holder's address as shown for the registration
> of the domain name in Registrar's Whois
> database at the time the complaint is
> submitted to the Provider.

*Id.* at 9. Mondial posits that the Mutual Jurisdiction provision in the UDRP governs Compana's declaratory judgment suit, and the Mutual Jurisdiction provision permits suits to be brought in federal court, provided the court's jurisdictional boundaries encompass Compana's business address.

Mondial overlooks the fact that the Mutual Jurisdiction provision applies only to cases in which the domain-name registrant challenges a decision of the UDRP arbitration panel. The WIPO has not yet issued its decision in the UDRP proceedings that Mondial initiated. And even if it had, Compana filed suit before the WIPO rendered its decision, so Compana's declaratory judgment action cannot be characterized as challenging a decision of a UDRP arbitration panel. Consequently, the Mutual Jurisdiction provision of the UDRP Rules does not govern this lawsuit. But the Mutual Jurisdiction's parenthetical——"provided the domain-name holder has submitted in its Registration Agreement to that jurisdiction . . ."——implies that the UDRP Rules anticipate that some

Registration Agreements will further restrict the permissible jurisdiction of the Mutual Jurisdiction provision and that third-party complainants are bound by these further restrictions.  The court is not aware of, and Mondial has not cited, any authority suggesting that ICANN does not permit registration agreements to contain mandatory forum selection clauses that are more restrictive than the Mutual Jurisdiction clause.

Mondial attacks the Registration Agreement with its forum selection clause as a self serving document between Compana and itself.  The Registration Agreement, however, is the same registrar/registrant contract that Compana as registrar employs with every other domain-name registrant.  Thus the Registration Agreement was not tailored for deals in which Compana was on both sides of the transaction.

The court therefore grants Compana's motion to remand this action to state court.

V

Compana seeks recovery of its attorney's fees and costs related to this removal.  The court denies the request.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citing

*Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)). In this developing area of the law, Mondial had an objectively reasonable basis for removing this case. The court therefore denies Compana's request for attorney's fees and costs.

*     *     *

Compana's August 6, 2007 motion to remand is granted, and this case is remanded to the 95th Judicial District Court of Dallas County, Texas. The clerk shall effect the remand according to the usual procedure.

**SO ORDERED.**

January 23, 2008.

SIDNEY A. FITZWATER
CHIEF JUDGE